# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMEKIA M. FORTNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:19-cv-01409-JHE |
| | ) | |
| MEGAN J. BRENNAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

On August 27, 2019, Plaintiff Tamekia M. Fortner[2] ("Fortner") filed this action, alleging her employer, the United States Postal Service ("Defendant" or "USPS"),[3] discriminated against her on various occasions in 2017 and 2018 on the basis of sex and race and in retaliation against her for reporting discrimination. (Doc. 1). On December 23, 2019, Defendant moved to dismiss some of Fortner's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. (Doc. 12). The undersigned converted that motion to a motion for summary judgment and allowed the parties to submit supplemental briefs and evidence. (Doc. 31). Defendant filed a supplemental brief, (doc. 32), and Fortner submitted a supplemental response brief and evidence, (doc. 33).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 19).

[2] Plaintiff initially filed this action under the name "Tamekia M. Foster," (*see* doc. 1), but later corrected the spelling of her surname. (*See* docs. 7-11).

[3] The named defendant in this action is Postmaster General Megan J. Brennan, (doc. 1), which is appropriate since "claims under Title VII for employment discrimination and retaliation may be brought only against the head of an agency in [her] official capacity." *Glover v. Donahoe*, 626 F. App'x 926, 931 (11th Cir. 2015) (citing *Canino v. United States EEOC,* 707 F.2d 468, 472 (11th Cir. 1983)). For convenience and clarity, this memorandum opinion refers to the USPS as the defendant in this action.

Although it was permitted to do so, the USPS did not file a supplemental reply brief. For the reasons stated below, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I. Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence).

2

However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts

Fortner, a maintenance mechanic at the Birmingham, Alabama Post Office, has worked for the USPS for approximately eighteen years. (Doc. 1 at ¶ 7). Foster's supervisory chain of command is: Maintenance Operations Supervisor Brandon Jordan ("Jordan"), a white male; Maintenance Operations Support Manager Billy Darty ("Darty"), also a white male; and Maintenance Operations Supervisor Jermel Maness ("Maness"), a black male. (*Id.* at ¶ 8).

On May 22, 2018, Fortner submitted an "Information for Pre-Complaint Counseling" form for the following forms of discrimination: "Retaliation, African American, Female, Disparate Treatment, Harassment." (Doc. 33-6). Fortner indicated she had filed an Equal Employment Opportunity ("EEO") complaint in December 2017,[4] but that it had been "withdrawn due to settlement."[5] (*Id.* at 1). On the May 22, 2018 form, Fortner indicated she had been issued a seven-

---

[4] Defendant attached the Affidavit of USPS attorney Melissa A. Romig ("Romig") to the reply in support of its motion to dismiss. (Doc. 30-1). Romig stated she had reviewed the USPS database for requests for EEO counseling by Fortner and had not found a request for EEO counseling in December 2017. (*Id.* at ¶ 12). However, as discussed below, Fortner's October 24, 2018 EEO Investigative Affidavit, signed under penalty of perjury, indicates that she did file such a complaint. (Doc. 33-1). To the extent the parties dispute the existence of this complaint, for summary judgment purposes, the undersigned resolves this factual dispute in Fortner's favor.

[5] Fortner had also filed a prior EEO complaint alleging a hostile work environment on January 23, 2017, but she withdrew it on March 23, 2017, after the offender was disciplined by

3

day suspension on May 18, 2018, following a verbal disagreement with a coworker. (*Id.*). Fortner stated that Jordan was the one who had taken the discriminatory actions against her because of the December 2017 EEO complaint, which had been initiated against him. (*Id.* at 2).

On October 24, 2018, Fortner signed an EEO Investigative Affidavit (the "Affidavit") alleging retaliation and unequal treatment on the basis of her race and sex. (Doc. 33-1). In support of the retaliation allegations, Fortner identified the protected activity in which she had engaged as "[a]n EEO and [sic] grievance was filed December 2017 citing discrimination." (*Id.* at 3). Asked to identify the case number and date for this case, Fortner stated: "unknown exact date, on or around December 2017." (*Id.*). Regarding the allegations in the previous EEO case, Fortner identified "Mr. Jordan" as the official who engaged in discrimination. (*Id.* at 4). Fortner stated she had been disciplined for a variety of alleged rules infractions on October 3, 2017, November 16, 2017, and November 25, 2017, while white and/or male employees were not punished for the same or more egregious infractions. (*Id.* at 4-5). Fortner indicated she believed her EEO activity was a factor in each instance of discipline. (*Id.* at 6, 10 & 14).

In the Affidavit, Fortner also stated that she was called into Jordan's office on a weekly basis between February 13, 2018 and May 18, 2018 and verbally harassed regarding nonexistent attendance issues. (*Id.* at 12-14). Fortner indicated that this stemmed from Jordan's "dissatisfaction with the previous EEO settlement" and that male employees were treated differently. (*Id.* at 13-14).

---

the USPS. (Doc. 33-6 at 1; doc. 33-7). It is not clear what relationship this has to any of the allegations in the complaint.

Fortner also indicated in the Affidavit that she was subjected to investigative interviews on April 26, 2018, and May 15, 2018. (*Id.* at 15). Fortner attributed these in part to the following: "Mr. Jordan has found every opportunity to harass me following his decision to remove the discipline per EEO settlement in Jan. 2018." (*Id.* at 16). Non-black and male employees did not receive investigative interviews for similar infractions. (*Id.* at 15-16).

Finally, Fortner stated in the Affidavit that the seven-day suspension was retaliatory and race- and sex-based. (*Id.* at 16-18). As to the retaliation component, Fortner stated that "Mr. Jordan has continually subjected me to harassment since settlement was reached (Jan 2018)." (*Id.* at 18).

### III. Analysis

Before she brings a claim under Title VII, a federal employee must exhaust her administrative remedies as a jurisdictional prerequisite. *See Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999). This requires her to "initiate administrative review of any alleged discriminatory or retaliatory conduct with the appropriate agency within 45 days of the alleged discriminatory act." *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (citing 42 U.S.C. § 2000e–16(b); 29 C.F.R. § 1614.105(a)(1)). "When the discriminatory act results in a personnel action, the employee must contact an EEO counselor 'within 45 days of the effective date of the action.'" *Id.* (citing 29 C.F.R. § 1614.105(a)(1)). If she fails to do so, "the claim is barred for failure to exhaust administrative remedies," *id.* at 1344, and her complaint is due to be dismissed, *Robinson v. Jojanns*, 147 F. App'x 922, 924 (11th Cir. 2005) (citing 29 C.F.R. § 1614.107(a)(2).

The starting point for the analysis here is somewhat hazy because, as the undersigned stated in the memorandum opinion converting the motion to dismiss to a motion for summary judgment, the specific claims Fortner raises in her complaint are confusing. (*See* doc. 31 at 4 n.5). Fortner's

5

complaint nominally contains two counts: a race and sex discrimination count for unspecified "discriminatory actions," (doc. 1 at ¶¶ 16-19), which incorporates all of the previous allegations in the complaint, (*id.* at ¶ 16), and a retaliation count for unspecified "retaliatory actions," (*id.* at ¶¶ 20-24), which *also* incorporates all previous allegations (including those in the race and sex discrimination count)*,* (*id.* at ¶ 20). This is characteristic of a shotgun pleading, which muddies the issues and makes it difficult for either the court or the defendant to understand what is actually being alleged. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (condemning as a "mortal sin" the practice of "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.").

Thus far, both parties and the undersigned have been operating from Defendant's characterization of Fortner's claims. In its original motion to dismiss, Defendant argued Fortner raised four claims, three of which were unexhausted: "(1) discipline for rules infractions in 2017, which Fortner appears to categorize as race and sex discrimination; (2) the letter of warning in December 2017 following Fortner's alleged EEO complaint, presumably a retaliation claim; and (3) retaliatory harassment about performance issues in February to April 2018." (Doc. 31 at 4) (citing doc. 12 at 4). This memorandum opinion will refer to these claims as the "Infractions Claim," the "Letter of Warning Claim," and the "Performance Harassment Claim," respectively. Defendant argued only the fourth claim, related to the seven-day suspension on May 22, 2018 (the "Suspension Claim"), was exhausted. (*Id.*). The undersigned accepted this as a reasonable construction of the claims in the complaint. (*Id.* at 4 n.5). The parties then analyzed the issues based on this understanding, with Fortner arguing only that Defendant had failed to provide

6

evidence that she had *not* exhausted her administrative remedies, leaving the issue "an open question" on which discovery should be permitted. (Doc. 23 at 3-4).

Defendant's supplemental brief continues to track this characterization, arguing Fortner cannot meet her burden to establish a *prima facie* case of discrimination for any of the three claims it originally attacked except for portions of the Performance Harassment Claim occurring on April 7, 2018, or afterwards (i.e., 45 days prior to Fortner's initial contact with the EEO counselor). (*See* doc. 32). In response, however, Fortner substantially modifies the lens through which she wants her complaint viewed. Fortner concedes any acts "which pre-date May 22, 2018" (by which she presumably means any acts prior to April 7, 2018) are untimely if viewed as discrete acts. (Doc. 33 at 7). However, Fortner now contends each represents a part of "a single ongoing unlawful employment practice" as a retaliatorily hostile work environment. (*Id.*).

The Eleventh Circuit recognizes a cause of action for a hostile work environment based on retaliation. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 862 (11th Cir. 2020). To make out a *prima facie* case for such a claim, a plaintiff must show (1) she engaged in protected activity; (2) after doing so, she was subjected to unwelcome harassment; (3) her protected activity was a but for cause of the harassment; (4) the harassment was such that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination; and (5) a basis exists for holding her employer liable, either directly or vicariously. *Swindle v. Jefferson Cty. Comm'n*, 593 F. App'x 919, 929 n.10 (11th Cir. 2014) (articulating the standard as set out in *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012) (per curiam) and *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)); *Monaghan*, 955 F.3d at 862 (modifying the *Gowski* standard). "An allegation that an employer has allowed a . . . hostile work environment to prosper embodies a single violation of an employee's right to 'the enjoyment of all benefits,

7

privileges, terms, and conditions of the contractual relationship' and, therefore, should be reviewed in its entirety if any part of this allegation falls within the statute of limitations period." *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282–83 (11th Cir. 2002).

  The only portion of Fortner's *prima facie* case at issue here is whether she engaged in timely protected activity such that she can satisfy the jurisdictional prerequisite. If the undersigned operated on the assumption of the claims in Fortner's complaint that all parties have been operating under since Defendant filed its motion to dismiss—four discrete adverse employment actions, each apparently the subject of a separate claim—the answer would be, as Fortner concedes, that she has not done so for any claims but (1) race-, sex-, and retaliation-based discrimination for any parts of the Performance Harassment Claim occurring on or after April 7, 2018; and (2) race-, sex-, and retaliation-based claims for the Suspension Claim. If the undersigned considered the construction of Fortner's complaint that she now advances, the answer would be that she *has* done so for (1) race-, sex-, and retaliation-based discrimination for any parts of the Performance Harassment Claim occurring on or after April 7, 2018; (2) race-, sex-, and retaliation-based discrimination for the Suspension Claim; and (3) a single retaliatory hostile work environment claim, incorporating prior acts of retaliation between the December 2017 EEO complaint and May 18, 2018.

  To the extent that Fortner's complaint contains discrete, independent claims for retaliation or race- and sex-based discrimination for the Infractions Claim, the Letter of Warning Claim, and the portions of the Performance Harassment Claim occurring prior to April 7, 2018, Defendant's motion is due to be granted. It is questionable, though, whether the complaint contains a retaliatory hostile work environment claim, as Fortner contends. Fortner proposes that a broad reading of her complaint would support it. (Doc. 33 at 9-10 n.5). It is true that one can squint and see the outlines of a retaliatory hostile work environment claim in the complaint. However, based on the fact that

8

Fortner has never previously contended that her complaint contains such a claim (despite ample opportunity to do so), this appears to be an entirely new theory of liability. That is a problem for Fortner, because a party may not simply assert a new theory of liability to avoid summary judgment. *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1360 (S.D. Fla. 2012). Instead, "[a]t the summary judgment stage, the proper procedure for [Fortner] is to amend [her] complaint in accordance with Fed. R. Civ. P. 15(a)." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

That said, Fortner obliquely requests leave to amend her complaint to include this claim, stating that "if the Court deemed it necessary, discovery and amendment of the pleadings would serve to flesh out this claim." (Doc. 33 at 9-10 n.5). Rather than guess at how the factual allegations are supposed to support the retaliatory hostile work environment claim, the undersigned will construe that footnote as a motion for leave to amend the complaint pursuant to Rule 15(a), which instructs a court to "freely grant" a motion to amend "when justice so requires." That said, Fortner has not provided any reason why discovery would be necessary for her to amend her complaint to include a claim she says is already present in it. The undersigned will grant Fortner's motion to the extent that she may file a freestanding motion for leave to amend with an attached proposed amended complaint, but deny the motion to the extent that Fortner requests discovery prior to filing her amended complaint.

If Fortner chooses to file a motion for leave to amend, she **must** separate her proposed amended complaint into discrete counts, specifically identify the cause of action she is asserting in each count (e.g., race discrimination, sex discrimination, a hostile work environment based on retaliation), state which purported acts of discrimination fall under each count, and clearly indicate which facts support each count. If Fortner does not file a motion for leave to amend, the only

9

claims going forward will be, as stated above, (1) race-, sex-, and retaliation-based discrimination for any parts of the Performance Harassment Claim occurring on or after April 7, 2018; and (2) race-, sex-, and retaliation-based claims for the Suspension Claim.

## IV. Conclusion

Defendant's motion for summary judgment, (doc. 12), is **GRANTED IN PART** to the extent that Fortner's independent claims for race-, sex-, or retaliation-based discrimination for the Infractions Claim, the Letter of Warning Claim, and the portions of the Performance Harassment Claim occurring prior to April 7, 2018, are **DISMISSED WITH PREJUDICE**.  To the extent the motion seeks other relief, it is **DENIED**.  Fortner's motion for leave to amend, (doc. 33 at 9-10 n.5), is **GRANTED IN PART** to the extent that she may file a separate motion for leave to amend with an attached proposed amended complaint, as outlined above, by **September 3, 2020**.  To the extent Fortner seeks discovery prior to filing any freestanding motion for leave to amend, her request is **DENIED.**

DONE this 20th day of August, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE