# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| TAMEKIA M. FORTNER, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:19-cv-01409-JHE |
| LOUIS DEJOY,[1] | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[2]

On September 4, 2020, pursuant to the undersigned's order granting leave, (doc. 36), Plaintiff Tamekia M. Fortner ("Fortner") filed her amended complaint in this employment discrimination action. (Doc. 37). Defendant Louis DeJoy ("Defendant" or the "USPS")[3] has moved to dismiss portions of the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction. (Doc. 43). For the reasons stated below, that motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] The original named defendant in this case was Megan J. Brennan, the former Postmaster General of the United States, sued in her official capacity. The court takes judicial notice that the current Postmaster General of the United States is Louis DeJoy. Pursuant to Fed. R. Civ. P. 25(d), DeJoy, in his official capacity, was automatically substituted as the defendant once he took office in June 2020. The Clerk is **DIRECTED** to update this case in CM/ECF to reflect the substitution, and the parties are **DIRECTED** to use this caption in all future filings.

[2] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 19).

[3] The named defendant in this action is the Postmaster General, which is appropriate since "claims under Title VII for employment discrimination and retaliation may be brought only against the head of an agency in his official capacity." *Glover v. Donahoe*, 626 F. App'x 926, 931 (11th Cir. 2015) (citing *Canino v. United States EEOC,* 707 F.2d 468, 472 (11th Cir. 1983)). For convenience and clarity, this memorandum opinion refers to the USPS as the defendant in this action.

**I. Legal Standard**

Federal courts are courts of limited jurisdiction, with the power to hear only cases authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), a party may move the court to dismiss a case if the court lacks jurisdiction over the subject matter of the case. Even when a party does not assert a jurisdictional challenge, "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005). Simply put, a federal court is powerless to act beyond its constitutional or statutory grant of subject-matter jurisdiction. *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). Regardless of how the issue came before the court, a plaintiff, as the party invoking jurisdiction, bears the burden of establishing the court's subject-matter jurisdiction. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

A challenge to a court's subject-matter jurisdiction may come by way of a facial attack or a factual attack:

> Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

*Garcia v. Copenhaver, Bell & Assocs., M.D.s*, 104 F.3d 1256, 1261 (11th Cir. 1997) (citations omitted).

Defendant raises a factual challenge. (*See, e.g.,* doc. 43 at 14) (objecting to the complaint on the basis that Fortner has not shown "sufficient record evidence" to support a claim in her complaint). Under a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations,

2

and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam) (citation omitted). Indeed, "[i]n the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002); *Motta v. United States*, 717 F.3d 840, 844 (11th Cir. 2013). However, a court may only find that it lacks subject matter jurisdiction "if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (citations omitted). When a jurisdictional challenge implicates the merits of the plaintiff's claim, the court must "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.* (citations omitted). This ensures "a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion." *Id.* (citations omitted) (alterations in original).

## II. Background

### A. Factual Background

Fortner, a maintenance mechanic at the Birmingham, Alabama Post Office, has worked for the USPS for approximately eighteen years. (Doc. 37 at ¶ 7). Foster's supervisory chain of command is: Maintenance Operations Supervisor Brandon Jordan ("Jordan," black male); Maintenance Operations Support Manager Billy Darty (male); and Maintenance Operations Supervisor Jermel Maness (black male). (*Id.* at ¶ 8).

Fortner alleges she was disciplined for alleged rules infractions between October 2, 2017 and November 2017, while white and/or male employees were not punished for the same or more

egregious infractions.  (*Id.* at ¶ 11).  Fortner states that she was issued a letter of warning on December 12, 2017, after she filed an Equal Employment Opportunity ("EEO") complaint earlier that month naming Jordan as the official who had discriminated against her.  (*Id.* at ¶ 12-13).

Between February and April of 2018, Fortner alleges she was called into Jordan's office on a weekly basis and verbally harassed regarding nonexistent workplace performance issues.  (*Id.* at ¶ 14).  Male and/or white employees were not disciplined for attendance issues.  (*Id.* at ¶ 15).

On April 19, 2018, Fortner was involved in a verbal altercation with Jared Black ("Black," white male).  (*Id.* at ¶ 16).  Investigative interviews followed on April 26, 2018, and May 15, 2018, resulting in a seven-day suspension for unacceptable conduct.  (*Id.* at ¶ 17-18).  Black, who initiated the incident, received no discipline.  (*Id.* at ¶ 18).

Fortner filed another complaint of discrimination regarding this seven-day suspension on May 22, 2018.  (*Id.* at ¶ 19).  This consisted of an "Information for Pre-Complaint Counseling" form for the following forms of discrimination: "Retaliation, African American, Female, Disparate Treatment, Harassment."  (Doc. 33-6).  Fortner indicated she had filed an EEO complaint in December 2017, but that it had been "withdrawn due to settlement."  (*Id.* at 1).  On the May 22, 2018 form, Fortner indicated she had been issued a seven-day suspension on May 18, 2018, following a verbal disagreement with a coworker.  (*Id.*).  Fortner stated that Jordan was the one who had taken the discriminatory actions against her because of the December 2017 EEO complaint, which had been initiated against him.  (*Id.* at 2).

On October 24, 2018, Fortner signed an EEO Investigative Affidavit (the "Affidavit") alleging retaliation and unequal treatment on the basis of her race and sex. (Doc. 33-1).  In support of the retaliation allegations, Fortner identified the protected activity in which she had engaged as "[a]n EEO and [sic] grievance was filed December 2017 citing discrimination." (*Id.* at 3). Asked

4

to identify the case number and date for this case, Fortner stated: "unknown exact date, on or around December 2017." (*Id.*).  Regarding the allegations in the previous EEO case, Fortner identified "Mr. Jordan" as the official who engaged in discrimination. (*Id.* at 4).  Fortner stated she had been disciplined for a variety of alleged rules infractions on October 3, 2017, November 16, 2017, and November 25, 2017, while white and/or male employees were not punished for the same or more egregious infractions. (*Id.* at 4-5).  Fortner indicated she believed her EEO activity was a factor in each instance of discipline. (*Id.* at 6, 10 & 14).

In the Affidavit, Fortner also stated that she was called into Jordan's office on a weekly basis between February 13, 2018 and May 18, 2018 and verbally harassed regarding nonexistent attendance issues. (*Id.* at 12-14).  Fortner indicated that this stemmed from Jordan's "dissatisfaction with the previous EEO settlement" and that male employees were treated differently. (*Id.* at 13-14).

Fortner also indicated in the Affidavit that she was subjected to investigative interviews on April 26, 2018, and May 15, 2018. (*Id.* at 15).  Fortner attributed these in part to the following: "Mr. Jordan has found every opportunity to harass me following his decision to remove the discipline per EEO settlement in Jan. 2018." (*Id.* at 16).  Non-black and male employees did not receive investigative interviews for similar infractions. (*Id.* at 15-16).

Finally, Fortner stated in the Affidavit that the seven-day suspension was retaliatory and race- and sex-based. (*Id.* at 16-18).  As to the retaliation component, Fortner stated that "Mr. Jordan has continually subjected me to harassment since settlement was reached (Jan 2018)." (*Id.* at 18).

**B. Procedural History**

On August 27, 2019, Fortner filed this action, alleging the Defendant discriminated against her on various occasions in 2017 and 2018 on the basis of sex and race and in retaliation against her for reporting discrimination. (Doc. 1). On December 23, 2019, Defendant moved to dismiss some of Fortner's claims pursuant to Rule 12(b)(1) for lack of jurisdiction. (Doc. 12). Specifically, Defendant alleged that any claims concerning acts that occurred prior to April 7, 2018, were jurisdictionally barred due to Fortner's failure to exhaust her administrative remedies with respect to any adverse employment action but her seven-day suspension. (*Id.* at 4-5).

After briefing was complete on that motion, the undersigned converted it to a motion for summary judgment and allowed additional discovery. (Doc. 31). Following another round of briefing, (docs. 32 & 33), the undersigned granted in part and denied in part the motion for summary judgment. (Doc. 34). The undersigned found Fortner's original complaint raised claims based on four discrete actions: (1) the "Infractions Claim," for discipline for rules infractions in 2017, arguably a race- and sex-discrimination claim; (2) the "Letter of Warning Claim," for the December 2017 letter of warning, a retaliation claim; (3) the "Performance Harassment Claim," for retaliatory harassment about performance issues from February to April 2018; and (4) the "Suspension Claim," related to the seven-day suspension on May 22, 2018. (*Id.* at 6). Based on the parties' submissions, the undersigned concluded that the Infractions Claim, the Letter of Warning Claim, and any portions of the Performance Harassment Claim predating April 7, 2018, were due to be dismissed with prejudice. (*Id.* at 8). However, the undersigned allowed Fortner to move for leave to amend her complaint to include a retaliatory hostile work environment claim. (*Id.* at 9-10).

Fortner moved for, (doc. 35), and was granted, (doc. 36), leave to file an amended complaint. She did so on September 4, 2020. (Doc. 37). After twice missing its deadline to file a responsive pleading, (*see* docs. 38 & 39), Defendant again moved to dismiss the amended complaint for lack of jurisdiction. (Doc. 43). Fortner has filed a response in opposition to that motion. (Doc. 49). Although Defendant had an opportunity to file a reply in support of its motion, (*see* doc. 46), it declined to do so.

### III. Analysis[4]

As discussed above, this case has a somewhat tortured history that involves, among other things, a confusing original complaint that made many of Fortner's claims difficult to understand. Defendant's introductory statement and synopsis of the case suggest the amended complaint is still at least somewhat confusing, even though the amendment cures many (but not all) of the issues in the original complaint. (Doc. 43 at 1-7). That said, whatever pleading infirmities the amended complaint has, Defendant has chosen to pursue only a jurisdictional challenge to the amended complaint under Rule 12(b)(1), rather than a challenge under Rule 12(b)(6). To the extent this 12(b)(1) challenge arguably implicates the merits of Fortner's claims, the undersigned finds the evidentiary record developed on the previous motion for summary judgment is sufficient to rule on this motion without again converting it. With that in mind, the undersigned turns to the jurisdictional challenges.

In the amended complaint, Fortner separates her causes of action into the following three counts: Count I, a Title VII race and gender discrimination claim that alleges discrimination based

---

[4] Although Defendant has requested oral argument, (doc. 43 at 2), the undersigned does not find oral argument is necessary to resolve its motion.

on being "subjected to increased scrutiny" with respect to her attendance, being "made to meet with her manager on a weekly basis to 'discuss phantom' attendance issues," and the seven-day suspension, (doc. 37 at ¶¶ 25-29); Count II, a Title VII retaliation claim that relates to the "phantom attendance" meetings and the seven-day suspension, (*id.* at ¶¶ 30-34); and Count III, a Title VII retaliatory hostile work environment claim that indicates she "suffered reprisals from management in the form of discriminatory intimidation, ridicule, and insult," (*id. at ¶¶* 35-40). Defendant argues the claims in Counts I and II are only viable as to the seven-day suspension, and that the retaliation and retaliatory hostile work environment claims have been previously dismissed with prejudice as to anything but the seven-day suspension. (Doc. 43 at 5-6).

Before she brings a claim under Title VII, a federal employee must exhaust her administrative remedies as a jurisdictional prerequisite. *See Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999). This requires her to "initiate administrative review of any alleged discriminatory or retaliatory conduct with the appropriate agency within 45 days of the alleged discriminatory act." *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (citing 42 U.S.C. § 2000e–16(b); 29 C.F.R. § 1614.105(a)(1)). "When the discriminatory act results in a personnel action, the employee must contact an EEO counselor 'within 45 days of the effective date of the action.'" *Id.* (citing 29 C.F.R. § 1614.105(a)(1)). If she fails to do so, "the claim is barred for failure to exhaust administrative remedies," *id.* at 1344, and her complaint is due to be dismissed, *Robinson v. Jojanns*, 147 F. App'x 922, 924 (11th Cir. 2005) (citing 29 C.F.R. § 1614.107(a)(2).

### A. Exhaustion of Remedies for Claims Pre-Dating April 7, 2018

Defendant first argues this court lacks jurisdiction over "all of Plaintiff's claims except those pertaining to the 7-day suspension issued on May 17, 2018" due to her failure to exhaust those claims. (Doc. 43 at 10-11). For the most part, this simply confirms the undersigned's

8

previous ruling regarding Fortner's first and second counts and lacks any application to Fortner's retaliatory hostile work environment case (into which Fortner has subsumed portions of the Performance Harassment Claim, and the Letter of Warning Claim),[5] as discussed below.  Fortner does not defend against this in her response, but she does not need to because it does not appear she is attempting to allege anything through Counts I and II but what the undersigned previously stated could go forward: "(1) race-, sex-, and retaliation-based discrimination for any parts of the Performance Harassment Claim occurring on or after April 7, 2018; and (2) race-, sex-, and retaliation-based claims for the Suspension Claim," (doc. 34 at 9-10).  Defendant offers no reason to change that conclusion, and specifically no reason to bar, as a jurisdictional matter, the portions of Fortner's Performance Harassment Claim (whether based on race, sex, or retaliation) that occurred on or after April 7, 2018.

### B. Retaliation and Retaliatory Hostile Work Environment

Defendant also argues Fortner cannot support a retaliation claim or a retaliatory hostile work environment claim because she cannot point to protected activity prior to the adverse activity she alleges.  (Doc. 43 at 13-15).  To the extent this challenge implicates the court's jurisdiction, it is addressed below as such.

---

[5] Admittedly, this requires a somewhat more generous reading of the complaint than Defendant offers.  That said, for the purposes of this Rule 12(b)(1) motion, the undersigned views the amended complaint through the lens of both the previous memorandum opinion and the extensive briefing that has led to this point.  The undersigned interprets Fortner's reference to receiving the letter of warning "after initiating the aforementioned EEO complaint," (doc. 27 at ¶ 13), and that the settlement of the December 2017 EEO complaint was "not the end of the matter because" Fortner subsequently received verbal harassment about phantom attendance issues, as indications that Fortner complains that these were retaliatory acts.

To establish a *prima facie* case for a garden-variety retaliation claim, a plaintiff must show (1) she engaged in protected activity; (2) the employer imposed on her a materially adverse action; and (3) the employer took the adverse action because the plaintiff engaged in protected activity. *See Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012).  As stated in the previous opinion, the Eleventh Circuit also recognizes a cause of action for a hostile work environment based on retaliation. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 862 (11th Cir. 2020).  To make out a *prima facie* case for such a claim, a plaintiff must show (1) she engaged in protected activity; (2) after doing so, she was subjected to unwelcome harassment; (3) her protected activity was a but for cause of the harassment; (4) the harassment was such that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination; and (5) a basis exists for holding her employer liable, either directly or vicariously.[6] *Swindle v. Jefferson Cty. Comm'n*, 593 F. App'x 919, 929 n.10 (11th Cir. 2014) (articulating the standard as set out in *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012) (per curiam) and *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)); *Monaghan*, 955 F.3d at 862 (modifying the *Gowski* standard).  "An allegation that an employer has allowed a . . . hostile work environment to prosper embodies a single violation of an employee's right to 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship' and, therefore, should be reviewed

---

[6] To be clear, Fortner is not required to include facts supporting a full *prima facie* case in her complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S.Ct. 992, 999 (2002) ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination ... to survive [a] motion to dismiss."); *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (Title VII complaint not required to make out *McDonnell Douglas* prima facie case); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270–71 (11th Cir. 2004) ("McDonnell Douglas [is] an *evidentiary* rather than a *pleading* standard . . . pleading a McDonnell Douglas prima facie case [is] not necessary to survive a motion to dismiss") (emphasis in original).

in its entirety if any part of this allegation falls within the statute of limitations period." *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282–83 (11th Cir. 2002).

The only portion of the *prima facie* case that arguably implicates the court's jurisdiction is whether Fortner engaged in protected activity. Defendant argues that Fortner has not adequately established that she has such that she can support a retaliatory hostile work environment claim. (Doc. 43 at 13-14). Specifically, Defendant says Fortner cannot show she filed an EEO complaint in December 2017. (*Id.* at 14). The problem for Defendant's argument is that it was already addressed by the court in the memorandum opinion on Defendant's converted motion for summary judgment and resolved against Defendant. In a footnote in the section of the memorandum opinion setting out summary judgment facts, the undersigned stated: "Defendant attached the Affidavit of USPS attorney Melissa A. Romig ("Romig") to the reply in support of its motion to dismiss. (Doc. 30-1). Romig stated she had reviewed the USPS database for requests for EEO counseling by Fortner and had not found a request for EEO counseling in December 2017. (*Id.* at ¶ 12). However, as discussed below, Fortner's October 24, 2018 EEO Investigative Affidavit, signed under penalty of perjury, indicates that she did file such a complaint. (Doc. 33-1). To the extent the parties dispute the existence of this complaint, for summary judgment purposes, the undersigned resolves this factual dispute in Fortner's favor." (Doc. 34 at 3 n.4). Accordingly, there was, and remains, sufficient record evidence that Fortner filed an EEO complaint in December 2017 to support the court's jurisdiction over Fortner's retaliation claim and retaliatory hostile work environment claim.[7] *See Shields*, 305 F.3d at 1282–83.

---

[7] Defendant cites *Chambless v. Louisiana-Pacific Corporation*, 481 F.3d 1345, 1350 (11th Cir. 2007), for the proposition that "Eleventh Circuit law establishes that a plaintiff cannot salvage

Defendant also argues the complaint fails to include sufficient facts to support an adverse employment action against Fortner. (Doc. 43 at 14-15). This argument fails for at least two reasons. First, Defendant is seeking relief under Rule 12(b)(1) on the basis that this court lacks jurisdiction because Fortner did not administratively exhaust her claims, not under Rule 12(b)(6) because Fortner's complaint fails to state a claim. Whether or not Fortner has sufficiently identified an adverse employment action does not implicate administrative exhaustion or the court's jurisdiction. Second, as noted above, Fortner is not required at the pleading stage to make out a full *prima facie* case sufficient to withstand summary judgment. Fortner has alleged she was retaliated against through a letter of warning on December 12, 2017, (*id.* at ¶ 13), and verbal harassment regarding nonexistent attendance issues, (*id.* at ¶ 14).[8] Although it is possible that the ultimate facts regarding that conduct will not support a retaliatory hostile work environment claim at summary judgment (e.g., if there were no real consequences flowing from the letter of warning

---

untimely claims of harassment by filing a timely claim related to a discrete act of discipline," (doc. 43 at 12), but its reliance is misplaced. *Chambless* distinguished independently actionable, discrete discriminatory acts (which, if untimely, could not be saved by a timely-filed claim) from hostile work environment claims consisting of a series of acts not individually actionable on their own (which, if even one such act was timely, could sweep in the untimely acts). 481 F.3d at 1349-50. By her own admission, Fortner is not trying to (and, in any event, cannot as a result of the law of the case) use the untimely acts that support her hostile work environment claim to support her race- and sex-based discrimination claim or her standalone retaliation claim.

[8] Fortner also says she was disciplined for alleged rules infractions, between October 2, 2017, and May 18, 2018, (doc. 37 at ¶ 11), but she bases this on her race and sex rather than retaliation. Consequently, this cannot fairly be termed part of Fortner's retaliatory hostile work environment claim. Instead, it duplicates the original complaint's Infractions Claim, which was dismissed with prejudice. To the extent the amended complaint attempts to reassert the Infractions Claim as anything more than background information, Defendant's motion to dismiss it is **GRANTED**.

or the verbal harassment turns out to be minimal), there is enough there for pleading purposes.[9] Furthermore, as many courts have found, when an employee identifies particular instances of workplace harassment, the issue of whether they are severe enough to qualify as material is best addressed on a fully-developed factual record. *See, e.g., Poague v. Huntsville Wholesale Furniture*, 369 F. Supp. 3d 1180, 1194 (N.D. Ala. 2019); *Strong v. AngioDynamics, Inc.*, No. 2:16-CV-01800-LSC, 2017 WL 1233796, at *3 (N.D. Ala. Apr. 4, 2017). Accordingly, Defendant's motion is due to be denied as to the adequacy of Fortner's retaliation and retaliatory hostile work environment claims.

## IV. Conclusion

For the reasons stated above, Defendant's motion to dismiss for lack of jurisdiction, (doc. 43), is **GRANTED** to the extent Fortner attempts to reassert the Infractions Claim, which has been previously dismissed. In all other respects, the motion to dismiss is **DENIED**. To allay any confusion, the following claims are proceeding:

- Count I, a race- and sex-discrimination claim for any actionable parts of the Performance Harassment Claim occurring on or after April 7, 2018 and for the Suspension Claim;

- Count II, a retaliation claim for any actionable parts of the Performance Harassment Claim occurring on or after April 7, 2018 and for the Suspension Claim; and

---

[9] It does not appear that Defendant contends the seven-day suspension was not an adverse employment action. To the extent it does, that suspension arguably qualifies even if no further consequences flowed from it. *See Evans v. Alabama Dep't of Corr.*, 418 F. Supp. 2d 1271, 1276 (M.D. Ala. 2005) (finding ten-day suspension without pay was adverse employment action).

- Count III, a retaliatory hostile work environment claim concerning the December 12, 2017 letter of warning and for the remainder of the Performance Harassment Claim.

Defendant is **ORDERED** to answer the amended complaint by **February 19, 2021**. The discovery stay currently in effect, (*see* doc. 48), is **LIFTED**.

DONE this 5th day of February, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE